BRY BLOCK MERCANTILE CO. v. COLUMBIA PORTRAIT CO.

(Circuit Court of Appeals, Sixth Circuit. February 2, 1915.)

No. 2540.

1. CONTRACTS ☞94—RESCISSION—FRAUD.

Where plaintiff induced defendant to contract to purchase medallions and frames from it, to be used in the furtherance of an advertising scheme, plaintiff's false laudatory statements concerning the merits of the scheme, that plaintiff would furnish frames at cost, that defendant would be able to charge its customers a sufficient profit on the frames to repay it for the medallions and cost of operating the scheme, and that frames to fit the medallions were made only by one company, which was controlled

by plaintiff, the contract fixing no price for the frames, were not such as to justify a rescission.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 420–430, 1160, 1164, 1165; Dec. Dig. ☞94.]

**2. CONTRACTS ☞94—RESCISSION—FRAUD.**

A misrepresentation by plaintiff's agent, inducing defendant to contract with plaintiff for medallions and frames to be used in an advertising scheme, that the medallions had never been offered to the public in the city of Memphis, if relied on by defendant, was sufficient to justify rescission.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 420–430, 1160, 1164, 1165; Dec. Dig. ☞94.]

**3. DAMAGES ☞175—CONTRACT—BREACH.**

Where, in an action for defendant's breach of a contract to purchase medallions from plaintiff to be used in an advertising scheme, plaintiff was permitted to show by estimate how many medallions defendant would probably have purchased from it, if it had bought from plaintiff all its requirements as provided by the contract, defendant was then entitled to show how many medallions it had, during the contract, purchased from the substituted manufacturer.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 469–471; Dec. Dig. ☞175.]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by the Columbia Portrait Company against the Bry Block Mercantile Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial granted.

Auvergne Williams, of Memphis, Tenn., for plaintiff in error.

Caruthers Ewing, of Memphis, Tenn., for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

DENISON, Circuit Judge. In the court below, the Portrait Company, hereafter called the plaintiff, recovered a judgment against the Mercantile Company, hereafter called the defendant. The judgment was based on a contract whereby the defendant was to adopt an advertising scheme being exploited by the plaintiff. The scheme was that the defendant would issue to its customers, with each purchase, coupons or memoranda showing the amounts of purchases made, and, when these purchases amounted to $10, it would furnish to the customer, without charge, an artistic reproduction, called a medallion, of any photograph which the customer sent in for that purpose. These medallions were to be made by the plaintiff for defendant at a stated price, the defendant agreed to buy them from plaintiff only, and the contract was to continue for a year.

To the declaration alleging that after a short time the defendant had refused to carry out the contract, but had procured its similar medallions from another company, whereby the plaintiff was damaged in the amount of the profits it would have made on the medallions it would have furnished, the defendant pleaded that the contract had been procured by certain fraudulent representations. Plaintiff demurred, the demurrer was sustained, a judgment entered by default, dam-

ages assessed by a jury, and final judgment entered. Defendant alleges error in overruling the demurrer and in receiving evidence upon the assessment of damages.

[1] It seems that the demurrer to the plea was sustained because the fraudulent representations pleaded were thought to be of such a character, either that they were not legally material, or that defendant had no right to rely upon them. They undoubtedly did have the color of merely puffing or highly laudatory statements, which, when made with reference to the merits of an advertising scheme and made to an experienced and skillful merchant, could constitute no basis for a charge of fraud; and some of them have that character only.

It was part of the contract that the plaintiff would furnish also frames for the medallions, and the representation was that the defendant would be able to charge its customers profit enough on the frames to repay it for the medallions and for all the cost of operating the scheme. The first representation pleaded is that three other named dealers in other cities had operated the plan, and had found that the profits on frames were sufficient to pay all expenses. This representation is said to have been depended upon, and to have been false. Obviously, its truth could not be material, unless a great many conditions in other cities were so similar in these earlier cases to the Memphis conditions affecting defendant that this experience would be a useful guide; and whether that similarity did exist would be, in most respects, matter of opinion. Especially is this true as to the amount of effort and ability given and to be given by the respective merchants in order to make the scheme successful. While the question is not free from doubt, we think it beyond the safe limits of the established rule to allow a rescission for fraud to be predicated upon such representations made in the surroundings shown without dispute by this record.

The next representation pleaded is that the frames which would fit these medallions were made only by one company, and that this was controlled by the plaintiff. No reason is suggested why suitable frames could not be made by any frame maker; and the representation, even if false, was inconsequential.

The next representation is that the frames were sold by plaintiff to defendant at cost. Since the contract did not fix any prices, it is clear that this statement amounted, at best, only to a promise that the frames were to be sold at cost; and a breach of this promise would give no ground for rescission.

[2] In all respects so far considered, the court was right in sustaining the demurrer; but the plea continued:

"The agent of the plaintiff further represented that the medallions in question had never been offered to the public in the city of Memphis"

—and alleged the untruth of this statement, and that the defendant relied thereon. This seems to us a statement of a material fact. The success of the plan must largely depend on its novelty, and if, in fact, it was an old story to the Memphis purchasing public, and had been tried and abandoned or tried and worn out, the whole plan would have a very different aspect. If this representation, and material reliance thereon, and its substantial falsity, and prompt repudiation therefor,

had been established, we think the rescission would be justified; and this leads to the conclusion that it was error to overrule the demurrer.

It seems unnecessary to refer to authorities. The rules governing the subject are settled and familiar, the difficulty comes in the application to particular facts, and precedents are not likely to control a problem so specific.

Some of the evidence put in the case on the assessment of damages indicates that, after the defendant had broken its contract to buy all its medallions from the plaintiff, and was buying them elsewhere, and after it must have known, if it ever did, that the representation about former use in Memphis was false, it was continuing to take the benefits of part of the contract. The declaration contains, in the last paragraph, a statement which is now said to allege the state of facts just mentioned, and which is, therefore, said to amount to an anticipatory avoidance of the plea of fraud, since, if the defendant was continuing to take benefits under the contract, it could not repudiate the burdens. We think this language of the declaration will not bear this construction; and the waiver of any fraud there may have been is not otherwise presented, so as to make a question for decision.

[3] On the assessment of damages, plaintiff was permitted to show, by estimate, how many medallions defendant probably would have purchased from it if defendant had bought from that source all its requirements as the contract provides. The defendant then proved how many medallions it had, during the term of the contract, purchased from the substituted manufacturer. It then offered to prove that the medallions so substituted were the precise equivalent of those made by plaintiff, and that, throughout the period, it had operated its store and the advertising scheme generally with these substituted medallions exactly as contemplated by the contract with plaintiff. This offer was refused, and we think the refusal was error. The amount of purchases that would have been made, if a contract had been carried out, is always difficult to prove; but there can be no more highly persuasive evidence than that which shows that under precisely equivalent conditions a certain number of an article exactly equivalent were, in fact, purchased. Of course, the equivalency of the article and of the conditions is of the utmost importance as showing the value of the comparison. Such evidence, without proving such equivalency, is of little force; but, when the equivalency sufficiently appears, the evidence must be more convincing than any expert estimate can be. The amount of damages awarded by the jury is considerably higher than it would have been if the damages had been computed on the basis of that number of medallions which this evidence would have tended to establish; and so we cannot say this error was immaterial.

For the reasons stated, the judgment must be reversed, with costs, and a new trial awarded.